MICHAEL KINDER, APPELLANT, v. ERIE RAILROAD COMPANY, RESPONDENT.

Submitted October 15, 1926—Decided April 13, 1927.

1. When a railroad company has provided a safe and proper place for a passenger to alight from its train at a station, and had provided a trainman to assist passengers at such exit, and a passenger, knowing of such safe exit, did not use it, but of his own volition and without invitation left the train by a dangerous exit and was struck and injured by a passing train, he assumed the risk of the danger thereby incurred.

2. A railroad company owes the duty to its passengers to use reasonable care to provide a safe place for them to alight from its trains, but is not an insurer of safe conditions, and an instruction to the jury that it was the duty of the railroad company to provide a safe way for a passenger to get from its train to a station, and that if this duty was neglected and the plaintiff was injured, and the defendant's negligence was the proximate cause of the accident, it was responsible in damages to the plaintiff, was erroneous.

On appeal from the Essex Circuit Court.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellant, *Hobart & Minard.*

For the respondent, *James P. Mylod.*

The opinion of the court was delivered by

LLOYD, J.   This is an appeal from a judgment of $4,000 entered against the Erie Railroad Company in the Essex County Circuit Court.   The action was for injuries to the plaintiff, Michael Kinder, caused by his being struck by a locomotive of the defendant company.   The accident happened in this way: The plaintiff was a passenger in the forward coach of a westbound eight-car train on the evening of February 12th, 1923, at Bloomfield.   The railroad is a double track system extending generally in an east and west direction through Bloomfield from a street known as Walnut street, curving slightly to the north as it runs west.   The station building and waiting-room are on the south side of the tracks about one hundred and thirty feet west of Walnut street.   On either side of the right of way there is a platform, the one on the north side extending from Walnut street to a point within seventy feet of a canal bridge, the bridge itself being five hundred feet west of Walnut street.   The plaintiff's evidence established that when the train on which he was riding stopped, the engine was on this bridge and the forward part of the car in which he was riding was also on the bridge; that he got out on the left-hand side following two other passengers who had preceded him, one of whom opened the door.   Before getting off he observed that the bridge abutments were too close to permit him to get out on the right side.   Stepping out on the left he landed on the wooden flooring of the bridge and between the east and westbound tracks.   He had taken but two steps when he was struck by a train going east.   It further appeared that there was no trainman at the front end of the car, but that there was a trainman at the rear who called out the station and opened the door at that end.   The accident happened about five P. M.

and the plaintiff said that it was a smoky evening, not dark, nor yet light, but he could see the station quite a   distance away.

His own testimony showed that he was familiar with the entire situation; that he was a regular rider on the road and train, and knew that the platform provided for passengers leaving the train was on the right; that there was none on the left, but that the eastbound track was there with loose stone between it and that of the westbound track. He knew that there was no trainman at the front door.

In this state of the proofs defendant's counsel moved for a nonsuit and later for a direction of a verdict for the defendant.

We think it was error to refuse these motions. The company had provided a safe and proper place for the plaintiff to alight, and had provided a trainman to assist passengers in thus alighting. It had not opened the front door, nor had it authorized others to do so. The plaintiff, knowing the facts, chose of his own volition and without invitation to leave the train by a dangerous exit, and in so doing assumed the risk of the dangers thereby incurred. We discover in the facts no duty of the railroad to the plaintiff which had been violated. For the unauthorized opening of the forward door it was not responsible. This might be done at any time by one sufficiently familiar with its mechanism. A trainman at the rear had called the station, but this did not imply an invitation to alight on the wrong side of the train and by an unopened door. The plaintiff knew that the right-hand rear door was opened, but used the left-hand front door as he stated because of the number of passengers passing out at the rear end, and he feared that the train might start before he got off. Presumably, the company had employed an adequate train crew in compliance with the requirements of the act of 1922, page 665, and was not obliged to provide a trainman at each end of every car. To hold such an obligation to exist would transcend that which the legislature has impliedly declared sufficient and make railroad travel a costly luxury. In the above it is difficult to discover anything further the company could have done to protect its passengers.

Other grounds of appeal refer to portions of the judge's charge. One of these is to that portion of the charge which reads as follows:

"The railroad was obliged to provide a safe way for a passenger to get from the train to the station, and, if this duty was neglected, so that the plaintiff was injured and the defendant's negligence was the proximate cause of the accident, the defendant is responsible in damages to the plaintiff, provided that the plaintiff was not guilty of contributory negligence, about which I will speak later.

"The relationship of passenger and carrier is not terminated when the passenger steps off the train. The company must provide a safe place for the passenger to get off."

This instruction was erroneous (doubtless given by inadvertence), and its harmful effect is manifest. The company was not bound to provide a safe way to get from the train to the station, nor was it bound to provide a safe place for the passenger to get off. As was said by the Court of Errors and Appeals in *Mason* v. *Erie Railroad Co.*, 75 *N. J. L.* 521, "it is the duty of a railroad company to use *reasonable care* to provide a safe place for its passengers to alight."

The instruction made the company an insurer of safe conditions, and, as applied to the present case if the facts presented a jury question, could well be understood as requiring that there should have been a safe way along the roadbed from the place where the plaintiff alighted to the station to which he said he was going.

It is urged by the respondent that, conceding the erroneous instruction, appellant was not injured thereby, as the trial judge in other portions of his charge laid down the correct rule when he defined reasonable care as applied to the present case to be such as a reasonable person exercises in view of all the circumstances presented to him. While even this definition is in doubtful accord with the rule laid down by our cases, in that a reasonable person is not necessarily either a reasonably or ordinarily prudent person (*Pesin* v. *Jugovish*, 85 *N. J. L.* 256), it was given to the jury without a withdrawal of the precise duty previously imposed on the com-

pany, and, hence, left the jury to determine for itself which of the two standards it would accept.  *Collins* v. *Central Railroad Co.,* 90 *Id.* 593.

The judgment is reversed.